UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

LUIS ALONSO HIDALGO, III,

Petitioner,

v.

ROBERT LEGRAND, *et al.,*

Respondents.

Case No. 3:16-cv-00618-MMD-WGC

ORDER

I.    **INTRODUCTION**

This is a habeas corpus action under 28 U.S.C. § 2254. Before the Court is Respondents' motion to dismiss (ECF No. 70 ("Motion")). The Court finds that multiple claims in the third amended petition (ECF No. 67 ("TAP")) do not relate back to the timely original petition (ECF No. 1), and the Court dismisses them. The Court also finds that three claims in the TAP either do not relate back to the original petition or are redundant to other claims in the TAP. Accordingly, the Court additionally dismisses those claims.

Moreover, Petitioner Luis Alonso Hidalgo, III ("Petitioner Hidalgo") has failed to exhaust his state-court remedies for part of Grounds Three and Four, but Petitioner Hidalgo has decided to dismiss the unexhausted parts. The part of Ground Sixteen, a claim of cumulative error, that does relate back to the original petition, is unexhausted, and Petitioner Hidalgo will need to decide what to do with this Ground. Additionally, the Court finds that Grounds Two and Three are cognizable in federal habeas corpus. The Court thus grants the Motion in part.

Petitioner Hidalgo has the same name as his late father, Luis Alonso Hidalgo, Jr. The Court notes that at trial, and in some court-filed documents, their nicknames were used. Luis Alonso Hidalgo, Jr. was referred to as "Mr. H.," and Petitioner Hidalgo was "Little Lou." Those nicknames are not appropriate for a case of this seriousness. Referring

1  to Petitioner as "Hidalgo" and referring to his father as "Hidalgo Jr.," though accurate,

2  creates the possibility in the reader's mind of reversing the relationship between the two

3  individuals. The Court therefore will follow the TAP. Petitioner will be "Petitioner Hidalgo,"

4  and his father will be "Hidalgo Sr." (together, "the Hidalgos").

5  **II.   BACKGROUND**

6  The Court draws the following summary of the facts from the initial petition. (ECF

7  No. 1 at 3-18.)

8  This case involves the murder of Timothy Hadland on May 19, 2005. Hidalgo Sr.

9  owned the Palomino Club ("Palomino" or the "Club"), which is a strip club in North Las

10  Vegas, Nevada. Petitioner Hidalgo was a manager at the Palomino. Anabel Espindola

11  was Hidalgo Sr.'s long-time romantic interest and the general manager of the Palomino.

12  Hadland had been a doorman at the Palomino. Deangelo Carroll worked at the Palomino

13  as a jack of all trades. Rontae Zone and Jayson Taoipu did unofficial work for the

14  Palomino; Carroll paid them under the table. Kenneth Counts was acquainted with Carroll.

15  The Palomino is distant from the main tourist areas of Las Vegas. At the time of

16  the events in this case, around and before May 19, 2005, the Palomino paid taxicab

17  drivers for each passenger that the drivers brought to the Club, hoping the bonus would

18  influence drivers to recommend the Palomino to their passengers. The Palomino's

19  doorman would give a driver a voucher with the number of passengers, and the driver

20  later would collect on the voucher. Hadland was a doorman.

21  Some weeks before May 19, 2005, Hidalgo Sr. learned that Hadland was falsely

22  overstating the number of passengers on the vouchers. The drivers would collect too

23  much money and then pay some of it to Hadland, who kept the money for himself.

24  Hadland had also been selling VIP cards to out-of-town customers, gaining them free

25  admission, and he again kept the money. Those cards were intended only for residents

26  of the Las Vegas area. Hidalgo Sr. then fired Hadland.

27  On May 19, 2005, Carroll called Espindola. Carroll said that Hadland had been

28  denigrating the Palomino to taxicab drivers. Espindola later told Petitioner Hidalgo and

2

Hidalgo Sr. The Hidalgos had a heated argument over what to do. Petitioner Hidalgo exclaimed that his father was nothing like two other well-known strip-club owners, who "take care of business." Petitioner Hidalgo called Carroll and told Carroll to come to the Club with baseball bats and garbage bags.[1] Later, Carroll and Hidalgo Sr. met in Hidalgo Sr.'s office. After the meeting, Carroll left and a short while later, Hidalgo Sr. told Espindola to call Carroll and tell him to "go to Plan B." Espindola did that, but Carroll protested and said that he would talk with her later. Espindola was unable to contact Carroll after that.

That same day, Carroll told Rontae Zone and Jayson Taoipu that Hidalgo Sr. wanted a man killed, and Carroll asked them if they wanted to participate. Taoipu did, Zone did not. The three went out in the Club's van to do what Zone thought would be promotion of the Club. However, Carroll stopped at a residence, where Kenneth Counts got into the van. Then Carroll drove toward Lake Mead. Along the way, Carroll called Hadland and set up a meeting at a place on the road to the lake.

When both Carroll, with his passengers, and Hadland arrived at the place, Hadland exited his vehicle and went to the driver-side window to speak with Carroll. Counts exited the van through the passenger-side sliding door, went around the van, and shot Hadland twice in the head. Hadland died instantly.

Police identified Carroll as a person of interest the next day. Carroll agreed to cooperate with the police. He wore an electronic listening device when he met several times with Petitioner Hidalgo, Hidalgo Sr., and Espindola. Among the subjects of conversation, Petitioner Hidalgo instructed Carroll to kill both Zone and Taoipu, perhaps by poisoning a bottle of gin.

///

///

---

[1]This was the trial testimony of Rontae Zone. Ex. 296 (ECF No. 46-30 at 12-13). One claim in the TAP is that the trial court erred in not admitting from the trial of Kenneth Counts the former testimony of Jayson Taoipu. Taoipu testified that Carroll told him that Espindola called Carroll and told him to bring baseball bats and garbage bags. Ex. 41 (ECF No. 27-1 at 67).

1

2

### III.    PROCEDURAL HISTORY[2]

#### A.    Petitioner Hidalgo

Petitioner Hidalgo was charged with one count of conspiracy to commit murder, one count of murder with the use of a deadly weapon, and two counts of solicitation to commit murder. Anabel Espindola, Kenneth Counts, Jayson Taoipu, and Deangelo Carroll were co-defendants. Ex. 2 (ECF No. 20-4). Hidalgo Sr. later was indicted in a separate case. The prosecution then moved to consolidate the two cases. This caused a problem because the same attorney represented both Petitioner Hidalgo and Hidalgo Sr. That problem was resolved, ultimately not to Petitioner Hidalgo's satisfaction, because one of his current claims is that the attorney operated under a conflict of interest. Petitioner Hidalgo and the prosecution ultimately agreed to consolidate the cases in exchange for the withdrawal of the notices of intent to seek the death penalty. (ECF No. 67 at 20-25.)

The jury found Petitioner Hidalgo guilty of conspiracy to commit murder, second-degree murder with the use of a deadly weapon, and two counts of solicitation to commit murder. The state district court entered its judgment of conviction on July 10, 2009. Ex. 26 (ECF No. 26-4). Petitioner Hidalgo appealed. The Nevada Supreme Court affirmed on June 21, 2012. Ex. 30 (ECF No. 26-8). Petitioner Hidalgo filed a petition for a writ of certiorari with the Supreme Court of the United States, which denied his petition on May 13, 2013. Ex. 363 (ECF No. 48-18).

Petitioner Hidalgo filed a state post-conviction habeas corpus petition on January 22, 2014. Ex. 31 (ECF No. 26-9). The state district court denied the petition on March 12, 2015. Ex. 35 (ECF No. 26-13). Petitioner Hidalgo appealed. The Nevada Supreme Court affirmed the denial on May 11, 2016. Ex. 38 (ECF No. 26-16). Remittitur issued on October 21, 2016. Ex. 391 (ECF No. 48-46).

---

[2]The Court notes that the records contain numerated exhibits submitted by the parties. As such, the Court cites to those exhibits in this order as "Ex." followed by the corresponding number and the specific CM/ECF citation.

1

2

3

4

Petitioner Hidalgo filed his initial federal habeas corpus petition under 28 U.S.C. § 2254 on October 25, 2016. (ECF No. 1.) He filed his first amended petition on January 5, 2018. (ECF No. 19.) He filed his second amended petition on September 27, 2018. (ECF No. 33.) He filed his operative TAP on December 4, 2020. (ECF No. 67.)

5

### B.    Other Co-Defendants

6

7

8

9

10

11

12

13

14

Jayson Taoipu pleaded guilty to one count of conspiracy to commit murder and one count of voluntary manslaughter with the use of a deadly weapon. (ECF No. 67 at 28.) Kenneth Counts was tried separately and found guilty of one count of conspiracy to commit murder. (*Id.* at 29.) Anabel Espindola agreed to plead guilty to voluntary manslaughter charges in exchange for her testimony against Petitioner Hidalgo and Hidalgo Sr. (*Id.* at 29.) Deangelo Carroll was tried separately and found guilty of one count of first-degree murder. (*Id.* at 29.) Hidalgo Sr. was found guilty of one count of conspiracy to commit murder and one count of second-degree murder with the use of a deadly weapon. Ex. 317 (ECF No. 47-12).

15

## IV.   LEGAL STANDARD

16

### A.    Timeliness

17

18

Congress has limited the time in which a person can petition for a writ of habeas corpus under 28 U.S.C. § 2254:

19

20

21

22

23

24

25

26

27

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28

28 U.S.C. § 2244(d)(1). If the judgment is appealed, then it becomes final when the Supreme Court of the United States denies a petition for a writ of certiorari. *See Jimenez v. Quarterman*, 555 U.S. 113, 119-20 (2009). Time spent on a properly filed state postconviction habeas corpus petition does not count toward the one-year period. *See* 28 U.S.C. § 2244(d)(2).

An amended habeas corpus petition "does not relate back (and thereby escape [28 U.S.C. § 2244(d)(1)'s] one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). Relation back is allowed "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts . . . ." *Id.* at 664.

## B. Exhaustion

Before a federal court may consider a petition for a writ of habeas corpus, the petitioner must exhaust the remedies available in state court. *See* 28 U.S.C. § 2254(b). To exhaust a ground for relief, the petitioner must fairly present that ground to the state's highest court, describing the operative facts and legal theory, and give that court the opportunity to address and resolve the ground. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

"[A] petitioner for habeas corpus relief under 28 U.S.C. § 2254 exhausts available state remedies only if he characterized the claims he raised in state proceedings specifically as federal claims. In short, the petitioner must have either referenced specific provisions of the federal constitution or statutes or cited to federal case law." *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000) (emphasis in original), *amended*, 247 F.3d 904 (9th Cir. 2001). Citation to state case law that applies federal constitutional principles will also suffice. *See Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc). "The mere similarity between a claim of state and federal error is insufficient to establish exhaustion. Moreover, general appeals to broad constitutional principles, such as due
///

6

1  process, equal protection, and the right to a fair trial, are insufficient to establish

2  exhaustion." *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (citations omitted).

3  **V.   DISCUSSION**

4      **A.   Timeliness**

5      Petitioner Hidalgo filed his initial petition within the one-year time limit. He filed his

6  first amended petition, second amended petition, and TAP after the one-year period had

7  expired. Claims in his operative TAP must relate back to his initial petition.

8          **1.   Ground 9, and Grounds 11(1) and 11(2)**

9              **a.   Grounds 9(1) and 9(2) do not relate back**

10      Grounds 9(1) and 9(2) allege that Petitioner Hidalgo's original trial counsel,

11  Dominic Gentile, was operating under a conflict of interest because counsel also

12  represented Hidalgo Sr. (ECF No. 67 at 109-22.) The facts alleged in Grounds 9(1) and

13  9(2) do not appear anywhere in the initial petition. Grounds 9(1) and 9(2) do not relate

14  back, and the Court dismisses them.

15              **b.   Ground 9(3), 11(1), and 11(2) do not relate back, or are**

16                  **redundant to other Grounds**

17      These three Grounds are closely related, if not identical. The Court addresses

18  them all at the same time.

19      A history of the amendments of the petition in this action is necessary background

20  for these grounds. The initial petition contained eight grounds numbered I through VIII.

21  (ECF No. 1.) Petitioner Hidalgo filed this petition *pro se*, but attorney Richard Cornell, who

22  represented Petitioner Hidalgo in his state post-conviction proceedings, prepared the

23  petition. (*Id.* at 48.) Grounds VII and VIII of the initial petition are relevant to Grounds 9(3),

24  11(1), and 11(2).

25      Ground VII concerned the former testimony of Jayson Taoipu in the trial of Kenneth

26  Counts. As noted above, Rontae Zone testified in Petitioner Hidalgo's trial that Deangelo

27  Carroll told him that Petitioner Hidalgo called Carroll and told Carroll to bring trash bags

28  and baseball bats to take care of Timothy Hadland. Ex. 296 (ECF No. 46-30 at 12-13). In

1   Counts's trial, Taoipu testified that Carroll told him that Anabel Espindola called Carroll

2   and made the bags-and-bats comment. Ex. 41 (ECF No. 27-1 at 67).

3        At the time of Petitioner Hidalgo's trial, Jayson Taoipu could not be found.

4   Petitioner Hidalgo moved to admit the excerpt of Taoipu's former testimony to

5   demonstrate that Petitioner Hidalgo did not make the bags-and-bats comment. The

6   prosecution stated that if an excerpt of Taoipu's former testimony would be admitted, then

7   all of Taoipu's former testimony would need to be admitted. Hidalgo Sr. objected on

8   Confrontation-Clause grounds. The trial court denied Petitioner Hidalgo's request to admit

9   the statement under state law, NRS § 51.325. The trial court determined that Taoipu was

10   unavailable and that the State of Nevada was a party in both trials. However, the trial

11   court determined that the issues were not substantially the same.

12        In Kenneth Counts's trial, the prosecution's theory was that Counts was the actual

13   murderer, thus it was irrelevant who told Deangelo Carroll to bring bats and bags, and the

14   prosecution never did examine Jayson Taoipu about the accuracy of this statement. Ex.

15   30 (ECF No. 26-8 at 7-8). The actual claim in ground VII was that trial counsel should

16   have moved under *Morales v. State*, 143 P.3d 463, 465-66 (Nev. 2006), to bifurcate the

17   trial at that point. As a result, the trial of Petitioner Hidalgo would have paused, and the

18   trial of Hidalgo Sr. would have continued to its conclusion. The jury would have

19   deliberated and reached its verdicts for Hidalgo Sr. and then the trial of Petitioner Hidalgo

20   would have resumed. (ECF No. 1 at 38-41.)

21        In ground VIII, Petitioner Hidalgo claimed that the trial court should have severed

22   and had separate trials for (1) the charges of conspiracy to commit murder and murder

23   with the use of a deadly weapon, regarding Timothy Hadland, and (2) the charges of

24   solicitation of the murder of Rontae Zone and Jayson Taoipu. (ECF No. 1 at 43-46.)

25        This Court previously granted Petitioner Hidalgo's motion for appointment of

26   counsel. (ECF No. 5.) The Federal Public Defender could not represent Petitioner Hidalgo

27   due to a conflict of interest, and the Court appointed attorney Mary Lou Wilson. (ECF Nos.

28   7, 9.) Wilson filed the first amended petition. (ECF No. 19.) The first amended petition

1   realleged the eight grounds of the initial petition and added ground 9. In ground 9(B) of

2   the first amended petition, Petitioner Hidalgo claimed that he received ineffective

3   assistance of counsel because counsel conceded to the motion to consolidate his trial

4   with that of Hidalgo Sr. in exchange for the prosecution withdrawing its notice of intent to

5   seek the death penalty. Petitioner Hidalgo argued that evidence against his father "spilled

6   over" onto him, and that he had an antagonistic defense. (ECF No. 19 at 74-79.)

7        Wilson also filed the second amended petition. (ECF No. 33.) It realleged the nine

8   grounds of the first amended petition. Ground 9(B) remained substantially the same. (ECF

9   No. 33 at 75-80.)

10        The Court granted Wilson's request to withdraw. (ECF No. 49.) The Court then

11   appointed attorney Russell Marsh. (ECF No. 51.) Marsh had a conflict of interest, and the

12   Court granted his request to withdraw. (ECF No. 57.) The Court then appointed attorney

13   Angela Dows, who remains counsel for Petitioner Hidalgo. (ECF No. 58.) Dows filed the

14   TAP, which realleged the eight grounds of the initial petition. Ground 9 was modified.

15   Ground 9(A), a claim of conflict of interest of trial counsel, became Grounds 9(1) and 9(2).

16   Ground 9(3) realleges the claim that counsel provided ineffective assistance by conceding

17   to the consolidation of the Hidalgo Sr. trial in exchange for the prosecution withdrawing

18   the notice of intent to seek the death penalty. Additionally, Ground 9(3) newly alleges that

19   trial counsel should have pushed to sever Petitioner Hidalgo's trial from Hidalgo Sr.'s trial.

20   (ECF No. 67 at 122-27.)

21        The TAP also added Grounds 10 through 16, including, relevantly, Grounds 11(1)

22   and 11(2). In Ground 11(1), Petitioner Hidalgo argues that trial counsel failed to move to

23   sever his trial from Hidalgo Sr.'s trial. (*Id.* at 134-36.) In Ground 11(2), Petitioner Hidalgo

24   argues that counsel provided ineffective assistance by agreeing to give up the severance

25   of the trials in exchange for the prosecution withdrawing the notice of intent to seek the

26   death penalty. (*Id.* at 137-38.) Grounds 11(1) and 11(2), considered together, are the

27   same as Ground 9(3).

28   ///

1        The Court is not persuaded that Ground 9(3) relates back to ground VIII of the

2 initial petition. The operative facts of ground VIII are that Petitioner Hidalgo was charged

3 with two counts regarding the death of Timothy Hadland, two counts soliciting the murders

4 of Rontae Zone and Jayson Taoipu, and he wanted the trial on those counts severed.

5 These operative facts differ from the operative facts of Ground 9(3), which are that trial

6 counsel should not have agreed to the consolidation of the trials of Petitioner Hidalgo and

7 Hidalgo Sr. and that trial counsel should have moved to sever those defendants.

8        The Court also is not persuaded that Ground 9(3) relates back to ground VII of the

9 initial petition. Ground VII claimed that trial counsel should have moved to sever the trials

10 of Petitioner Hidalgo and Hidalgo Sr. so that Petitioner Hidalgo could have moved to

11 introduce Jayson Taoipu's former testimony. Petitioner Hidalgo, however, does not

12 mention Taoipu's former testimony in Ground 9(3), despite Petitioner Hidalgo's

13 arguments in his opposition. (*See* ECF No. 74 at 9.) Ground 9(3) does not share a

14 common core of operative fact with ground VII of the initial petition. Ground 9(3) does not

15 relate back, and the Court dismisses it.

16        Alternatively, even if Petitioner Hidalgo intended *sub silentio* to include Jayson

17 Taoipu's former testimony as an example of an antagonistic defense in Ground 9(3), two

18 problems arise. First, the rest of Ground 9(3)—the agreement to consolidate the trials of

19 Petitioner Hidalgo and Hidalgo Sr. in exchange for the withdrawal of the notice of intent

20 to seek the death penalty, the possibility of "spill over" evidence harming Petitioner

21 Hidalgo's case, and antagonistic defenses other than Taoipu's former testimony—does

22 not relate back to any claim in the initial petition. Second, Ground 9(3) limited to Taoipu's

23 former testimony is the same as Ground 7 of the TAP, which is the same as ground VII

24 of the initial petition. Ground 9(3) is redundant, and the Court dismisses it for that reason.

25        Respondents do not argue that Grounds 11(1) and 11(2) are untimely. However,

26 given that, together, they are the same as Ground 9(3), and Ground 9(3) is untimely, then

27 Grounds 11(1) and 11(2) necessarily are also untimely.

28 ///

1       In the alternative, the Court agrees with Respondents' argument that Grounds

2  11(1) and 11(2) are redundant to Ground 9(3). (*See* ECF No. 70 at 17.) The Court would

3  dismiss Grounds 11(1) and 11(2) as redundant if the Court was not dismissing them as

4  untimely.

5                **c.**     **Ground 9(4) does not relate back**

6       In Ground 9(4), Petitioner Hidalgo alleges appellate counsel provided ineffective

7  assistance because counsel did not raise as an issue the admission of Deangelo Carroll's

8  hearsay statements that were prejudicial and were not in furtherance of the alleged

9  conspiracy. (ECF No. 67 at 127-30.) Both Rontae Zone and a police detective testified

10  that they heard Carroll say to Zone to tell the truth when Zone spoke with the police. (*Id.*)

11  In ground II of the initial petition, Petitioner Hidalgo claimed that the district court erred

12  when it failed to admit Carroll's statement to Petitioner Hidalgo, in their secretly recorded

13  conversation, that Petitioner Hidalgo had nothing to do with the crime and had no reason

14  to worry. (ECF No. 1 at 20-21.) A hearsay statement that was admitted is different in time

15  and type from a different recorded statement that was not admitted. Ground 9(4) cannot

16  relate back to ground II of the initial petition.

17       In ground V of the initial petition, Petitioner Hidalgo claimed that trial counsel failed

18  "to tender a jury instruction that out-of-court statements made by co-conspirators may not

19  be considered against the Petitioner if the statements themselves are the only evidence

20  of the Petitioner's participation in the conspiracy." (ECF No. 1 at 26.) However, nowhere

21  in ground V did Petitioner Hidalgo mention Carroll's statement to Rontae Zone to tell the

22  truth. Ground 9(4) does not relate back to ground V of the initial petition. The Court

23  therefore dismisses Ground 9(4).

24                **d.**     **Ground 9(5) does not relate back**

25       Ground 9(5) is a cumulative-error claim incorporating Grounds 9(1) through 9(4).

26  (ECF No. 67 at 130-31.) Ground 9(5) does not relate back to the initial petition because

27  all other parts of Ground 9 do not relate back.

28  ///

### 2.   Ground 10 does not relate back

Ground 10 is a claim of error in the jury-selection process because the trial court seated jurors who were afraid of retaliation in a case with gang involvement. (*Id.* at 131-32.) Nothing in the initial petition involves jury selection. Petitioner Hidalgo argues that he made claims regarding jury instructions in the initial petition. However, jury selection, at the start of the trial, is different in time and type from jury instructions, at the end of the trial. Hidalgo also argues relation back to the first or second amended petitions. However, those petitions themselves are untimely. Even if Ground 10 could relate back to the first or second amended petition, it still would be untimely. The Court therefore dismisses Ground 10.

### 3.   Ground 11

#### e.   Grounds 11(1) and 11(2)

The Court has discussed these two parts of Ground 11 above in conjunction with Ground 9(3). *See supra* at pp. 7-10.

#### f.   Ground 11(3) does not relate back

In Ground 11(3), Petitioner Hidalgo claims that trial counsel failed to investigate an alternative theory of defense. (ECF No. 67 at 138-39.) The theory was that Deangelo Carroll acted on his own to kill Timothy Hadland. Both had been involved in the same scam to sell VIP cards to out-of-town customers. The Hidalgos and Espindola had discovered Hadland's involvement in the scam. The theory went that Carroll had Hadland killed to cover up Carroll's own involvement in the scam. Nothing in the initial petition mentions the possibility of this alternative theory of defense. Ground 11(3) does not relate back, and the Court therefore dismisses it.

#### g.   Ground 11(4) does not relate back

In Ground 11(4), Petitioner Hidalgo claims that trial counsel failed to subpoena Deangelo Carroll to testify at his trial. (*Id.* at 139-40.) Nothing in the initial petition mentions the possibility of Carroll testifying. Ground 11(4) does not relate back, and the Court therefore dismisses it.

1

### h.     Ground 11(5) does not relate back

2   In Ground 11(5), Petitioner Hidalgo claims that trial counsel failed to clarify the

3   charge of conspiracy as it related to Petitioner Hidalgo. (*Id.* at 140-43.) The parties and

4   the trial court discussed whether there was one conspiracy—to kill Timothy Hadland and

5   then to kill Rontae Zone and Jayson Taoipu—or two conspiracies—one conspiracy to kill

6   Hadland and then another conspiracy to kill Zone and Taoipu. Ex. 289 (ECF No. 46-23 at

7   27). The information originally charged that the conspiracy (as alleged in count 1)

8   encompassed the acts alleged in counts 1 through 4. Counts 3 and 4 were the charges

9   that Petitioner Hidalgo solicited the murders of Zone and Taoipu. The trial court struck the

10  letter "s" from "counts" and the phrase "through 4." The jury thus was instructed that the

11  conspiracy to commit murder, count 1, involved only the murder of Hadland, charged as

12  count 2. The solicitation charges, counts 3 and 4, were not charged as part of the

13  conspiracy. Ex. 39 (ECF No. 26-17 at 4-6). Nothing in the initial petition mentions any of

14  the above facts. Ground 11(5) does not relate back, and the Court therefore dismisses it.

15

### i.     Ground 11(6) does not relate back

16  In Ground 11(6), Petitioner Hidalgo claims that trial counsel failed to object to the

17  pecuniary-gain aggravating circumstance in the notice of intent to seek the death penalty.

18  (ECF No. 67 at 143-44.) Nothing in the initial petition mentions the pecuniary-gain

19  aggravating circumstance. Ground 11(6) does not relate back, and the Court therefore

20  dismisses it.

21

### j.     Ground 11(7) does not relate back

22  In Ground 11(7), Petitioner Hidalgo claims that trial counsel failed to investigate or

23  subpoena Deangelo Carroll or Jayson Taoipu. (*Id.* at 144-46.) Regarding Carroll, ground

24  II of the initial petition is a claim that the trial court erred in not admitting Carroll's secretly

25  recorded statement to Petitioner Hidalgo. (ECF No. 1 at 20-21.) Carroll said to Petitioner

26  Hidalgo that Petitioner Hidalgo need not worry because Petitioner Hidalgo was not

27  involved in Hadland's death. In contrast, Ground 11(7) has a different actor—trial counsel

28  instead of the trial court—doing something different—issuing a subpoena for Carroll to

1   testify as opposed to introducing Carroll's recorded statement into evidence without his

2   testimony. The facts regarding Carroll differ in time and type, and thus that part of Ground

3   11(7) does not relate back to ground II of the initial petition.

4          Regarding Jayson Taoipu, ground III of the initial petition is a claim that the trial

5   court erred in not admitting Taoipu's former testimony from the trial of Kenneth Counts.

6   (*Id.* at 21-22.) In contrast, Ground 11(7) has a different actor—trial counsel instead of the

7   trial court—doing something different—investigating Taoipu's whereabouts and issuing a

8   subpoena for his testimony instead of admitting Taoipu's former testimony. The facts

9   regarding Taoipu differ in time and type, and thus that part of Ground 11(7) does not

10  relate back to ground III of the initial petition.

11         Ground 11(7), as a whole, does not relate back to the initial petition. The Court

12  therefore dismisses it as untimely.

13                      **4.    Ground 12 does not relate back**

14         In Ground 12, Petitioner Hidalgo claims that the equal and consecutive sentences

15  of life imprisonment with eligibility for parole starting after 10 years, for second-degree

16  murder with the use of a deadly weapon, violate the Fifth, Sixth, Eighth, and Fourteenth

17  Amendments for two reasons. First, Petitioner Hidalgo argues that he should have

18  received the benefit of the 2007 amendment to NRS § 193.165, which changed the

19  enhancement sentence for use of a deadly weapon to a consecutive sentence with a

20  maximum term not more than 20 years and a minimum term not less than one year. (ECF

21  No. 67 at 147-48.) Second, Petitioner Hidalgo argues that his sentence was excessively

22  greater than the sentence that Kenneth Counts received for killing Timothy Hadland. (*Id.*

23  at 148.)

24         Petitioner Hidalgo argues that Ground 12 relates back to ground IV of the initial

25  petition. Ground IV is a claim that counsel failed to tender a jury instruction that directed

26  "the jury not to find the deadly weapon enhancement if the jury were to find Petitioner

27  guilty of second degree murder on a conspiracy theory, absent evidence of use of a

28  weapon as part of the conspiracy." (ECF No. 1 at 23.) *I.e.*, if Petitioner Hidalgo conspired

to have Timothy Hadland killed, but Petitioner Hidalgo did not discuss the use of a weapon, then the weapon was not part of the conspiracy. Then, because Petitioner Hidalgo's guilt for second degree murder is based upon the conspiracy theory—Petitioner Hidalgo did not kill Hadland himself—Petitioner Hidalgo could not be guilty of the use of a deadly weapon.

Other than the deadly-weapon enhancement being at the center of both ground IV and Ground 12, the operative facts are different. Ground IV involves a proposed jury instruction that Petitioner Hidalgo could not be found guilty of the use of a deadly weapon if the conspiracy to commit murder did not involve a deadly weapon. The facts of Ground 12 are: (1) the 2007 amendments that changed the potential sentence for use of a deadly weapon and (2) a comparison of Petitioner Hidalgo's sentence with Kenneth Counts' sentence. The facts are different in time and type. Ground 12 does not relate back to the initial petition, and the Court therefore dismisses it as untimely.

### 5.  Ground 13 does not relate back

Ground 13 is a claim that insufficient evidence existed to support the verdict of guilt for conspiracy to commit murder. Petitioner Hidalgo argues that Ground 13 relates back to ground V of the initial petition. (ECF No. 67 at 149-51.) Ground V is a claim that trial counsel failed to tender a jury instruction that statements of co-conspirators could not have been considered against Petitioner Hidalgo if the statements themselves were the only evidence of Petitioner Hidalgo's participation in the conspiracy. (ECF No. 1 at 26.) Ground V thus involves something that trial counsel did not do at the close of evidence. Ground 13, in contrast, involves the evidence that the prosecution presented, or did not present, to the jury. The facts differ in time and type. Ground 13 does not relate back to the initial petition, and the Court therefore dismisses it as untimely.

### 6.  Ground 14 does not relate back

Ground 14 is a claim that the prosecution committed misconduct because their statements that Petitioner Hidalgo told Deangelo Carroll to bring bats and bags differed from Jayson Taoipu's former testimony in Kenneth Counts's trial that Anabel Espindola

1   made that comment. (ECF No. 67 at 152-53.) Petitioner Hidalgo also claims the

2   prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), because the prosecution did

3   not disclose to the defense Taoipu's testimony in Counts's trial. (*Id.* at 153.) Petitioner

4   Hidalgo argues that this claim relates back to ground III of the initial petition, which argued

5   that the trial court erred in not admitting that fragment of Taoipu's former testimony. (ECF

6   No. 1 at 21-22.) That common fact aside, the operative facts are different. Ground III of

7   the initial petition claimed that the trial court erred during the trial in not admitting Taoipu's

8   former testimony. Ground 14 claims the prosecution committed misconduct before the

9   trial by making arguments contrary to Taoipu's former testimony. Those facts differ in time

10  and type. Ground 14 does not relate back to the initial petition, and the Court therefore

11  dismisses it as untimely.

12              **7.    Ground 15 does not relate back**

13          Ground 15 is a claim that all of Petitioner Hidalgo's convictions lacked sufficient

14  evidence to support them. (ECF No. 67 at 153-54.) Petitioner Hidalgo argues this Ground

15  relates back to ground I of the initial petition. Ground I of the initial petition is a claim that

16  Jury Instruction 40 was invalid. That Jury Instruction informed the jury that if slight

17  evidence supported the existence of the conspiracy, then the jury could consider the

18  statements of co-conspirators as evidence that Petitioner Hidalgo was a member of the

19  conspiracy. The operative fact of ground I is thus that Jury Instruction, while the operative

20  facts of Ground 15 are all the evidence presented at trial. The two claims do not share a

21  common core of operative fact. Ground 15 does not relate back to the initial petition, and

22  the Court therefore dismisses it as untimely.

23              **8.    Ground 16 relates back**

24          Ground 16 is a claim of cumulative error. (*Id.* at 154-55.) A cumulative-error claim

25  necessarily incorporates the facts alleged elsewhere in the petition. Although the Court is

26  dismissing multiple grounds for untimeliness, Grounds 1 through 8 remain. Without the

27  untimely claims, the cumulative-error claim still relates back to Grounds 1 through 8. So

28  constrained, Ground 16 is thus timely.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.     Exhaustion of State-Court Remedies**

Respondents argue that Grounds 3, 4, and 9 through 16, are unexhausted. The Court is dismissing Grounds 9 through 15 as untimely, or, in the case of Grounds 9(3), 11(1), and 11(2), alternatively as redundant. The Court will therefore not determine whether Petitioner Hidalgo has exhausted those dismissed Grounds. The exhaustion of Grounds 3, 4, and 16 remain at issue. The Court will thus discuss these Grounds in turn below.

**9.     Ground 3**

In Ground 3, Petitioner Hidalgo argues that the trial court violated the Fifth, Sixth, and Fourteenth Amendments when it denied the admission of Jayson Taoipu's former testimony. Ground 3 also incorporates Ground 7, the claim of ineffective assistance of trial counsel and appellate counsel regarding the failure to seek a bifurcation of the trial to admit Taoipu's former testimony. (ECF No. 67 at 86-87.) Respondents argue that the allegation of the Fifth Amendment and the incorporation of Ground 7 are new, and that Petitioner Hidalgo did not present them to the state courts. (ECF No. 70 at 14.) Petitioner Hidalgo abandons the allegation of the Fifth Amendment and the incorporation of Ground 7. (ECF No. 74 at 20.) Ground 3, as modified by Petitioner Hidalgo's abandonment, is exhausted.

**10.     Ground 4**

In Ground 4, Petitioner Hidalgo claims that trial counsel was ineffective for not tendering, and appellate counsel was ineffective for not raising on appeal, a jury instruction that directed the jury to find Petitioner Hidalgo not guilty of the deadly-weapon enhancement if the jury determined that Petitioner Hidalgo was guilty of second-degree murder on a conspiracy theory, absent evidence of use of a weapon as part of the conspiracy. Alternatively, Petitioner Hidalgo claims that trial counsel was ineffective in not making this attack part of his timely motion for judgment of acquittal. (ECF No. 67 at 86-89.) Respondents argue that Petitioner Hidalgo never presented the alternative claim to the state courts. (ECF No. 70 at 15.) Petitioner Hidalgo asks to dismiss the alternative

1    claim. (ECF No. 74 at 21.) Ground 4, as modified by Petitioner Hidalgo's decision, is
2    therefore exhausted.

3          **11.    Ground 16**

4          Petitioner Hidalgo argues that Ground 16, the claim of cumulative error, is
5    unexhausted. (ECF No. 67 at 154.) This is true even with the Court's determination above
6    that Ground 16 cumulates only the errors alleged in the timely Grounds. In state court,
7    Petitioner Hidalgo argued cumulative error only as to the claims of ineffective assistance
8    of counsel in his post-conviction proceedings. Ex. 37 at 26 (ECF No. 26-15 at 40). He did
9    not argue cumulative error on direct appeal. *See* Ex. 29 (ECF No. 26-7). The remaining
10   grounds of the TAP contain both claims raised on direct appeal and claims raised on post-
11   conviction appeal. Consequently, Ground 16 in its current form is unexhausted.

12         **C.    Cognizable Claims**

13         Respondents argue that Grounds 2 and 3 are not cognizable because they are
14   claims of state-law error by the trial court in not admitting a recorded statement by
15   Deangelo Carroll (Ground 2) and Jayson Taoipu's former testimony (Ground 3). However,
16   the issue is not whether the Grounds are cognizable, but whether the state-court
17   decisions are contrary to, or unreasonable applications of, clearly established federal law
18   as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d).
19   Those are issues of the merits, and Respondents need to address them as such.

20   **VI.    CONCLUSION**

21         It is therefore ordered that Respondents' motion to dismiss (ECF No. 70) is granted
22   in part. The Court dismisses Grounds 9, 10, 11, 12, 13, 14, and 15 as untimely.
23   Alternatively, the Court dismisses Grounds 9(3), 11(1), and 11(2) as redundant. Ground
24   16 is unexhausted. In all other respects, Respondents' motion to dismiss (ECF No. 70) is
25   denied.

26         It is further ordered that Petitioner Luis Alonso Hidalgo, III, must file a motion for
27   dismissal without prejudice of the entire petition, for partial dismissal of Ground 16, or for
28   other appropriate relief, within 30 days from the date of entry of this order. Within 10 days

of filing such motion, Petitioner Hidalgo must file a signed declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 that he has conferred with his counsel in this matter regarding his options, that he has read the motion, and that he has authorized that the relief sought therein be requested. Failure to comply with this order will result in the dismissal of this action.

DATED THIS 15th Day of November 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

19